We're going to start with 19-1140, Martinez v. United States. Mr. Bryant, are you ready for... Oh, I should mention this. We will take a 10-minute break after the third case. We have five cases scheduled for this morning. Mr. Bryant, are you ready to begin? I am, Your Honor. Please proceed. Good morning, Your Honors. May it please the Court. My name is Raymond Bryant. I represent the appellant plaintiff, Anthony Martinez, in the case at Barr. I'd like to reserve three minutes for rebuttal. The reason we're here today is because on December 5th, 2012, at 3.30 a.m., three Southern Ute tribal police officers used stealth blackout tactics to approach plaintiffs' rural home, which concealed their police identities and scared plaintiffs into believing the officers were dangerous gang members who had earlier started a confrontation at his home and were back for revenge. After seeing the dark-colored SUV that looked similar to the gang members turn off its headlights and drive slowly past his house, plaintiffs obtained a bat from inside the home and watched from his front yard as the darkly clad figures approached his home on foot. When the darkly clad figures appeared intent to trespass onto his family property and were immediately in front of his home, plaintiff ran toward them yelling with a bat in hand in order to scare them off. He then turned away to run back home, and officers shot him in the back. Plaintiff asserted constitutional claims pursuant to the Fourth Amendment and negligence claims pursuant to the FTCA and Colorado law. The constitutional claims were deemed close to the facts in white v. poly and were dismissed based on qualified immunity. Plaintiffs proceeded to a bench trial on the negligence claims based on the FTCA and Colorado law. After a six-day bench trial, Judge Richard Meech issued a six-page written order concluding that Mr. Martinez's threat of force was more negligent than the officers' stealth approach and precluded liability against defendants based on the determination that plaintiff's conduct constituted an intervening cause that broke the chain of causation. We are asking this court to overturn the district court order primarily because the district court failed to recognize and apply important principles of Colorado negligence law. The district court erred in four main ways that we'd like to discuss today. First, the district court failed to recognize or apply Colorado's defense of property statute, CRS 18-1-705, which codified plaintiff's right to use and threaten force to defend its property and prevent persons from trespassing. Second, the district court failed to consider or apply Colorado's broad scope of risk analysis to test whether plaintiff's intervening force was truly an intervening cause sufficient to preclude defendant's liability. Third, the district court failed to apportion faults in violation of CRS 13-21-111, which caused uncertainty and ambiguity in the court's order and which is going to become problematic for a court assessing how negligent the parties were in this case, sufficient to making decisions that would otherwise require something other than remand and retrial. Fourth, the court rejected admission of prior disciplinary records that demonstrated additional duties and negligence on the part of the senior officer, Officer Mitchell. Counsel, this is Judge Hartz. On the first three issues, on what basis do you say that the judge did not consider those legal principles? Well, Your Honor, first and foremost, there's no mention of Colorado law anywhere in the judge's six-page order except as it pertains to Colorado comparative negligence. The court simply finds that Colorado law says if a plaintiff is more negligent defendants, then plaintiff cannot recover from defendants. He so finds, and that is the end of any inquiry or any discussion about Colorado law at all. Counsel, don't we presume that the district court followed the law? Is there some indication in what the judge said that he was not following those statutes, not considering it? Yes, Your Honor. We can look to the substance of the negligence analysis to determine whether or not the court actually applied the rights afforded in CRS 18-1-705. There's no analysis of whether and to the extent to which plaintiff complied with the rights afforded by that statute. If the court had considered it, he would have indicated how far he strayed from the rights afforded in that statute or how far he strayed from the standard of care the court was considering. But the court did not do that. Instead, the court simply declared that Mr. Martinez was completely negligent or more negligent than the officers in running towards the officers with the bat in hand. And that conduct is exactly the type of conduct that is protect, well, he has a right to use under the statute. So since the court faults a plaintiff for engaging in conduct that would be protected under the statute without any mention of the statute or how his conduct differed from the statute, we can conclude that he did not consider the statute. The same holds true for the scope of risk analysis. The court would have needed to examine the scope of risk in order to make a determination about whether or not plaintiff's conduct was truly an intervening cause. The Colorado law is clear that intervening forces do not absolve defendants from injury caused to plaintiff when it was a natural and probable consequence of defendant's conduct. Sorry to interrupt. I want to take you back to the discussion you were having with Judge Hart about the application of 18-1-705. This is Judge Harson, I should say. The statute provides a defense and says that somebody is justified in using reasonable and appropriate physical force upon another person. What's the standard for determining whether the force your client used was reasonable and appropriate under your argument? Well, I think that force which would be reasonable and appropriate to scare away the intruders would be per se reasonable. Since there was no actual use of force here, there was only the threat of force. Plaintiff never contacted the officers whatsoever. In fact, after he started running towards the officers and yelling to make the threats with the bat, he then turned away and ran back home. He was actually shot in the back. So I think that since the statute affords a right to use force, certainly a threat of force would be considered reasonable under these types of circumstances to prevent what reasonably appears to be an attempt to trespass. Could he have threatened deadly force? I think a threat, yes, would be covered under the statute. I think it gets... Actually, I think the statute permits the use of deadly force as well. But since there was a threat, I think it's clear that it was reasonable under these circumstances. Did I answer your question? Yes. So I noticed you cited in your brief, the restatement second of tort, section 77. Yes, Your Honor. And that says that an actor's privilege to use reasonable force not intended to cause serious bodily injury to prevent intrusion on the actor's land. Yes. Don't you think that running at somebody with a bat could be construed as the use of... ...use of force that would cause reasonable bodily injury or serious bodily injury? Well, first, I'd just like to note that restatement second of tort 77 includes a lesser standard than that afforded under 18-1-705. Obviously, the restatement of torts has been incorporated through various Colorado decisions. But I think the real issue is whether 18-1-705 applies. Barring that, of course, restatement of tort 77 would apply, that does not allow a person to use force that would be intended or likely to cause death or serious bodily injury. So that would be a lesser standard. But again, plaintiff's conduct would meet that standard as well since he merely threatened the officers and did not use any force, certainly not that which would be likely to cause death or serious bodily harm. So have you cited us to a case under Colorado law where the Colorado courts have said that that statute allows the use of deadly force or force that would cause serious bodily injury? No. Unfortunately, Your Honor, we could not find a case, I could not find a case in my research that specifically applies 18-1-705. However, we did find a case that applies its sister statute, 18-1-704, which authorizes in very similar language, a person is justified in using physical force but in that case for self-defense. So according to that... At the common law, the amount of force you can use to repel an attack on your person has historically been a higher level of allowed force than for protecting property. Would you agree with that? Yes, I would, Your Honor. Okay. And I guess what I'm getting at is we have to have something that provides the level of force that's appropriate under the statute to define the term reasonable and appropriate force. And I'm just wondering why the common law standard for that wouldn't fill in that blank. Well, I think it could, Your Honor. And if you actually look at 18-1-705, you find that, and defendants argued this as well in their brief, that there are three mentions of reasonable. You have to have reasonableness of the force, you have to have reasonableness of a perception that somebody may trespass, and then the third one escapes my memory at the moment. But there are considerations of reasonableness in the statute, and the court did not examine those. So that's another reason we can be sure the court didn't apply it. Well, that goes back to whether or not he examined them or not. He didn't say it in his decision, but you don't know whether he considered that. Well, again, because the court faulted plaintiff for engaging in conduct that is clearly covered by the statute, it's clearly in contravention of the rights afforded by 18-1-705. Counsel, Judge Matheson, do you have any questions? Yes. Counsel, I have a rather threshold question. Why don't we lack jurisdiction in this case under the discretionary function exception to the Federal Tort Claims Act? I'm not sure what you mean. Can you give me a little more to go on? Well, this is a Federal Tort Claims Act claim, correct, for negligence? Correct. And the discretionary function exception in the act is an exception to the government's waiver of sovereign immunity. My question is, why do we have jurisdiction here? Why isn't this a discretionary function exception type of case? I think I understand what you mean. Are you talking about 2880H? Well, I don't have the site in front of me. That's a fairly basic part of the act, though, and I want to know if we have jurisdiction here and whether this issue was even addressed in district court. The issue was addressed in the district court in a different order. It has not been raised on appeal, so it's not here for our consideration. Well, the district court order, which I have looked at, concerns the intentional court provision, but I didn't see discretionary function exception, and I'm just wondering why we have jurisdiction here. Why wasn't this a discretionary act that's policy-based? I think it is a... Unfortunately, Your Honor, I wouldn't be able to attend to that without the briefing. We did brief it extensively, and the court did make a determination on it. I just did not prepare that for argument today. I apologize. I would need to reference the case law to be able to address it. Okay, let me just ask you one other question about the Defense of Property Act. Do you have any Colorado cases where the act has been considered in assessing foreseeability or comparative negligence? No, Your Honor. As I mentioned earlier, we did not find any case in our research. However, we found that sister statute applied in a civil case. The right to self-defense under 181-704. Our statute is 181-705. We think it would similarly apply under the logic of Dare v. Subel, 674 Pacific 2nd 960, which requires Colorado courts to look at the law of the state, including judicial enactments, for the principles that would apply to the standard of care for a plaintiff's comparative negligence. So, obviously, if, according to Valdez v. City of County in Denver, applying that self-defense statute, 181-704, determine that it applies in civil cases. And similarly, 181-705 should apply in civil cases in the same way. Just because it hasn't come up in a Colorado case doesn't mean those principles do not similarly apply and guide this court's determination. Counsel, this is Judge Hart. I have one additional question. I'm sorry, has the time expired, Mr. Wyman? Yes, it has, Your Honor. Okay, let me ask this question, and please be brief. Were there any submitted proposed findings affecting conclusions of law by the parties? There was a trial brief submitted by a plaintiff, but I do not believe there was any. I don't recall one. I was curious why the judge would not have addressed matters that were raised in proposed findings and conclusions, but perhaps that's because there were no proposed findings and conclusions. I think that may be the case, Your Honor. The only thing I recall and the only thing I see here in my file is the trial brief submitted by plaintiff. I believe the court just made its own determination and wrote its own six-page order without asking for proposed findings. Thank you, Counsel. Thank you. Mr. Brenton, are you ready to proceed? I am, Your Honor. Good morning and thank you. May it please the court, I am Kyle Brenton on behalf of the United States. After hearing five days of testimony, the district court concluded that the tactics the three officers used in approaching the Martinez home the night of the shooting were not unreasonable. The court acknowledged that the stealth approach tactics used could create a risk of confusion and confrontation with the property owner, but held that in light of the purpose of those tactics to protect officer safety and the potentially dangerous nature of the call, using the tactics did not breach a duty of care. The court thus found no negligence attributable to the officers. Moreover, the court concluded that Martinez's conduct in leaving the property, charging into the public road and ambushing the officers with a bat was not reasonably foreseeable to the officers and was more negligent than any conduct on the part of the officers, even if their conduct had been negligent. Those conclusions were correct and the judgment in favor of the United States should be affirmed. Now, I would like to address Martinez's argument regarding Colorado statute section 18-1-705 and his argument regarding the scope of the risk. Of course, to the extent the court has questions about other arguments, I'm happy to address those as well. Before I begin, I will address Judge Matheson's question regarding the discretionary function exception to the Federal Tort Claims Act because that obviously is a significant issue for the court's jurisdiction. There was substantial briefing before the district courts. These cases have a somewhat tortured procedural history. There were originally two cases raising different claims. They were ultimately consolidated in this case. There was briefing regarding whether the assault exception to the FTCA barred jurisdiction. The district court concluded that it did bar an assault claim but not a negligence claim. In the end, the United States did not assert a discretionary function defense, and so that issue was never addressed in the district court because that defense was not asserted. To the extent the court would like supplemental briefing on that issue to address that, we are, of course, happy to provide that, but that issue is not in the case as it exists today. Counsel, Judge Matheson, just to be clear, the district court didn't address that question either. That's correct, Your Honor, because the United States did not raise a discretionary function defense. Why don't we give the parties 10 days to submit a 20HA letter to address the issue of jurisdiction? That's obviously an essential issue here. So if you could submit authority within 10 days, if you'd like, on the discretionary function exception, we can get simultaneous briefing by the two parties. Happy to do so, Your Honor. Thank you very much. Now, turning to the argument regarding Section 705, Martinez argues that this statute should have changed the district court's analysis in two ways. First, by affecting what the officers had reason to foresee, and second, by playing into the analysis of comparative fault. Now, neither argument is correct, but before I address this, I want to address Judge Hartz's question and really the entire crux of Martinez's argument that the district court failed to consider that it legally erred by failing to cite Section 705 and consider it. And in response to Judge Hartz's specific question, the district court did not request that the parties submit proposed findings and conclusions. So I think that was not part of Judge Maitch's typical practice. It certainly did not occur in this case. But whether the issue of Martinez's reason of whether his actions were reasonable in attempting to, as he saw it, defend his property, was squarely before the district court throughout the trial. Martinez raised the statute in his trial brief. He questioned the officers about their knowledge of property owners' rights. His expert discussed the issue, and he discussed it in his closing. So to say that the general issue of whether Martinez acted reasonably in defense of his property is something the district court ignored is, I think, not a fair characterization of what occurred below. Now, I mentioned that Martinez raises this argument in the context of foreseeability and comparative fault, and I want to address those two separately because they're analytically quite distinct. Now, as to foreseeability, Martinez argues that the officers are charged with the knowledge of Colorado law, and so based on Section 705, they had reason to foresee that Martinez would, as the occupant of the property, mistake them for trespassers and that he would run into the public road and threaten them with force to get them to leave. Now, the problem with this is that even if you assume the officers should have foreseen conduct in conformance with the statute, Martinez did not act in conformance with the statute. Now, there is no language in the statute or in any case applying it to the effect that a property occupant is permitted to leave the property and preemptively attack potential intruders. There's thus no basis to say that the officers should have, based on the statute standing alone, foreseen that Martinez might sally forth from the property and ambush them in the public road. Now, Martinez points out that there is no language in the statute expressly barring a property owner from leaving the property to defend it, and that's true, but when you're talking about foreseeability, it is simply unreasonable to suggest that the officers should have foreseen Martinez's actions based on what the statute doesn't say. The question as to foreseeability is not whether some courts might someday hold that the statute does permit preemptive strikes off the property. It's not an abstract question about the scope of the statute. Instead, it's a very practical question about whether on December 5, 2012, these three officers should have foreseen that Martinez would leave the property based entirely on the statute. Now, because there's no positive law of any kind saying that the statute sanctions leaving the property, there's no basis for that conclusion that the officers should have foreseen that conduct based on the statute. So, even if the district court had expressly discussed Section 705 in its order, there's no reason to believe that would have changed the court's foreseeability analysis. Now, the second area... Let me interrupt you for a moment. Judge Matheson, do you have any questions? Why don't you go ahead? I may get down the road. Judge Carson, do you have questions? I don't have anything right now. Okay. Proceed, counsel. Thank you, Your Honors. Now, the second area where Martinez argues that Section 705 should have come into play is comparative fault. And I want to say first and foremost, comparative fault only comes into play where the court determines that the defendant was negligent and then must compare the fault of the parties. Now, here, the district court concluded that the tactics the officers used were not unreasonable and that they were not a basis for finding a lack of reasonable care for the safety of a resident and that the officers had no reason to foresee Martinez's conduct. So, the court here found no negligence on the part of the officers. So, the whole question of comparative negligence is something the court doesn't need to address at all to the extent the district court discussed it. It was at best an alternative rationale for the holding and I think a discussion called for by the extreme nature of Martinez's conduct. But it is certainly not an issue that this court needs to address. But to the extent the court wants to address it, this is precluded from relying on the statute here because the statute requires a criminal defendant claiming its protection to act reasonably. Now, the statute, in fact, tells the fact finder that a defendant invoking its protection must be reasonable three times. He has to use reasonable appropriate physical force to the extent reasonably necessary to prevent what he reasonably believes to be a trespass. Now, here, the district court found that Martinez's conduct in going out of his house and confronting what he assumed were the Price brothers in the public road was unreasonable and that it exhibited a lack of reasonable care for his own safety. Now, to be sure, the district court did not pick each of the three boxes next to the three factors in section 705 of this analysis. But it is simply impossible that the district court's overall finding of Martinez's unreasonability could coexist with findings that, in fact, know he did act reasonably when you only look at it under the three prongs of the statute. There's simply no universe where those can both be true. So as a factual matter, the court's conclusion that Martinez acted unreasonably bars him from claiming the protection of the statute. And I do want to address, before I move on to the next question, just one factual issue regarding the specific nature of what exactly happened in the moments before Mr. Martinez was shot. Counsel this morning and in the district court, and in fact Mr. Martinez himself on stand, testified that he turned from the officers, he ran, and then he was shot in the back. Well, that is not consistent with the district court's factual findings. And in fact, the district court's discussion of this is on page 5 of its order. And the court expressly rejects Plaintiff's version of the facts, the version of the facts whereby he turned, ran, and was then shot. Ultimately, the district court adopted the version of the facts proposed by Dr. Bux, the expert forensic pathologist presented by the United States. And his discussion of exactly what the physical evidence shows was happening appears around page 1164 of the appendix. And Dr. Bux's conclusion, which was adopted by the district court, is that Martinez was running toward the officers, heard the first shot which missed, began to turn, and was hit by the second shot as he was presenting his side to the front of the weapon. And that's how he was shot in, quote, the side of his back, which is what the district court found. So I just want to make sure that that factual issue is, as the district court found it, is addressed. So I can move on to the scope of the risk issue very briefly. Counsel, this is Judge Mathison. Could I just ask you, you mentioned the question of whether the officers were found to be negligent or not a couple of times. And the district court addressed this issue in the first paragraph of its decision under conclusions of law. And I've read that paragraph a number of times now. And I'm not finding it quite as cut and dried as you're describing it. I'm not saying that he found them negligent, but I'm not saying that he found them not negligent. Could you help me get to clearer ground on that? Certainly, Your Honor. And I agree that this paragraph of the district court's order, that the conclusions of law section, needs careful reading. But I will say that because the burden is on the plaintiff to establish negligence, I think we have to find a clear indication in the order of negligence to conclude that that's what he concluded. And what he says in the order is that the evidence does not support a finding that the approach in itself is unreasonable, given the risks involved and the purpose of the tactic that he discusses earlier in the order to protect officer safety. So that's the first piece. The second piece is later in that paragraph where he says that the decision to use these tactics, quote, may have been imprudent, but it is not a basis for finding a lack of reasonable care for the safety of a resident. So they are, I mean, certainly the district court, he's using the word imprudent. I think he's making his views in terms of whether, as a policy matter, this was a good thing to do. I think he has his views, but I think he's clearly found that it is not a basis for finding a lack of reasonable care. And then the third piece. Go ahead, I'm sorry. Well, the third piece is on page six, which is when he's discussing foreseeability, because, of course, to find the officer's negligence, he has to find all four elements of a negligence claim. One of those elements is causation, and he has to find proximate causation and so has to examine foreseeability, which under Colorado law is a question of fact. And he determines that even though the officers are charged with knowledge that a stealth approach could be misinterpreted and cause the occupants to believe they were about to be assaulted, they had no reason to believe that Martinez would run at them on the county road, threatening them with a bat with little time to react. So right there he has rejected the premise that the officer's tactics could be the proximate cause of the injury. So in light of those findings, I don't think there's any way to conclude that he, in fact, found the officers negligent. So, counsel, it's at your position, then, that if we agree with that, do we even need to reach the proximate cause or comparative negligence issues? Well, Your Honor, you certainly don't need to reach any comparative negligence or apportionment of fault issues. I believe Plaintiff's is challenging the proximate causation finding based on Section 705, but as I've discussed, Section 705 did not give the officers reason to foresee Martinez's conduct. So I think agreeing that he found no negligence does dispose of the vast majority of this appeal. Thank you, counsel. Your time has expired, unless, Judge Carson, do you have any questions at this point? I don't, thank you. And Judge Matheson? I don't either, thank you. Counsel, I mentioned 20HA, that ordinarily we conference, the panel would conference at the bench and give instructions on that. I mentioned 10 days, but we'll conference afterwards, and you'll receive direction from the clerk's office regarding the timing and pagination limits on that. So please wait to hear from us on that. Counselor excused. Case 19-1140 is submitted.